# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Edward S. Kiel |
| | : | |
| v. | : | Mag. No. 24-mj-15045 |
| | : | |
| ABEL TORRES GONZALEZ and | : | **CRIMINAL COMPLAINT** |
| DANIEL TORRES | : | |

I, Richard J. Light, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Task Force Officer with the Drug Enforcement Administration, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

Continued on the attached page and made a part hereof:

_Richard J Light_
Richard J. Light
Task Force Officer
Drug Enforcement Administration

Task Force Officer Light attested to this Complaint by telephone pursuant to Fed. R. Crim. P. 4.1(b)(2)(A) on this 2nd day of February, 2024, in the District of New Jersey.

/s/ Edward S. Kiel
Honorable Edward S. Kiel
United States Magistrate Judge

## ATTACHMENT A

## COUNT ONE
(Conspiracy to Possess with Intent to Distribute Cocaine)

On or about February 1, 2024, in Passaic County, in the District of New Jersey and elsewhere, the defendants,

**ABEL TORRES GONZALEZ, and
DANIEL TORRES,**

did knowingly and intentionally conspire with each other and others to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

In violation of Title 21, United States Code, Section 846.

## **COUNT TWO**
(Possession with Intent to Distribute Cocaine)

On or about February 1, 2024, in Passaic County, in the District of New Jersey and elsewhere, the defendants,

**ABEL TORRES GONZALEZ, and
DANIEL TORRES**,

did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

## ATTACHMENT B

I, Richard J. Light, am a Task Force Officer with the Drug Enforcement Administration ("DEA"). I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, the statements of individuals, and my review of reports, documents, and other items of evidence. Because this Complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where statements of others are related herein, they are related in substance and part. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

1. In or around January 2024, defendant Abel Torres Gonzalez ("GONZALEZ") communicated with a confidential source ("CS-1") working with law enforcement via an encrypted messaging application. During one of those communications, GONZALEZ agreed to provide CS-1 with approximately 8 kilograms of cocaine in exchange for $128,000, or $16,000 per kilogram.

2. GONZALEZ agreed to meet CS-1 on or about February 1, 2024, at a particular parking lot in Paterson, New Jersey ("Meeting Location-1") at a specific time, so that GONZALEZ could sell the cocaine to CS-1.

3. On or about February 1, 2024, law enforcement established surveillance near Meeting Location-1.

4. Pursuant to DEA standard procedures, before CS-1 was to meet with GONZALEZ, law enforcement equipped CS-1 with an audio recording device and searched Individual-1 for contraband, with a negative result.

5. While conducting surveillance, law enforcement observed two cars drive into Meeting Location-1: a green Toyota Highlander ("Vehicle-1"), later determined to be driven by GONZALEZ, and a gray Honda CRV ("Vehicle-2"). After Vehicle-1 stopped in a parking space at Meeting Location-1, GONZALEZ exited Vehicle-1. CS-1 approached GONZALEZ. GONZALEZ and CS-1 had a brief conversation. GONZALEZ asked CS-1 if CS-1 had the money to pay for the cocaine.

6. GONZALEZ then entered the driver's seat of Vehicle-1. CS-1 entered the back seat of Vehicle-1. CS-1 observed a quantity of a white powdery substance packed into eight brick-shaped objects in the back seat of Vehicle-1. While this interaction occurred between GONZALEZ and CS-1, law enforcement observed another individual ("Individual-1") walking in a crouched position between parked cars and peering into the cars.

7. Individual-1 then signaled towards Vehicle-1 and shouted to GONZALEZ, in sum and substance: "Let's go." Based on my training and

experience, it appeared that Individual-1 and the individuals in Vehicle-2 were serving as lookouts. CS-1 then exited Vehicle-1, leaving the white powdery substance in Vehicle-1. Individual-1 entered Vehicle-2, which was parked nearby with 2 other individuals inside. Vehicle-2 exited Meeting Location-1 and stopped at a traffic light.

8. GONZALEZ then reversed Vehicle-1 out of the parking space and turned left out of Meeting Location-1. Law enforcement, located in an unmarked vehicle in front of GONZALEZ, activated its emergency lights and siren and signaled GONZALEZ to stop Vehicle-1.

9. GONZALEZ ignored law enforcement's commands and reversed Vehicle-1 away from the unmarked vehicle and began to turn Vehicle-1 in the opposite direction. Vehicle-1 then crashed into another unmarked vehicle driven by law enforcement, and Vehicle-1's airbags deployed. Law enforcement agents in the unmarked vehicle got out, approached Vehicle-1, and placed GONZALEZ under arrest.

10. Law enforcement recovered the eight brick-shaped objects GONZALEZ had in Vehicle-1. The white powdery substance was field-tested and returned positive results for cocaine. In total, the eight bricks of white powdery substance containing cocaine weighed approximately 8,528 grams.

11. Law enforcement then stopped Vehicle-2 and ordered the three occupants, including Individual-1, another individual, and Defendant David Torres ("TORRES"), out of Vehicle-2.

12. After being advised of and waiving his *Miranda* rights, TORRES voluntarily admitted to law enforcement that the approximately 8 kilograms of cocaine belonged to him, that he had purchased the cocaine for $14,000 per kilogram, and that he intended to sell them to CS-1.

13. TORRES voluntarily consented to a search of his cellular phone ("Phone-1"). Phone-1 contained messages from another encrypted messaging application between TORRES and three separate individuals exchanged in or around January 2024, discussing where to pick up and how to pay for cocaine.